**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
Stephen B. Selbst
Sean E. O'Donnell
Christopher W. Carty
(212) 592-1400
(212) 592-1500 Facsimile
sselbst@herrick.com
sodonnell@herrick.com
ccarty@herrick.com

*Attorneys for DePalma Acquisition I, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
                                      :
In re:                                :   Chapter 11
                                      :
**VP WILLIAMS TRANS, LLC**,           :   Case No. 20-10521 (MEW)
                                      :
               Debtor.                :
                                      :
------------------------------------- x

**DEPALMA ACQUISITION I, LLC'S RESPONSE TO DEBTOR'S OBJECTION TO**
**DEPALMA ACQUISITION I, LLC'S ELECTION OF 11 U.S.C. § 1111(b)**

Creditor DePalma Acquisition I, LLC ("DePalma"), as the assignee of the National Credit Union Administration Board acting in its capacity as Liquidating Agent for Melrose Credit Union, by its counsel Herrick, Feinstein LLP, respectfully submits this response to the objection of debtor VP Williams Trans, LLC (the "Debtor") dated September 16, 2020 [ECF No. 34] (the "Objection") to the *Election Pursuant to 11 U.S.C. § 1111(b)* [ECF No. 23] (the "Section 1111(b) Election"). As explained below, the Court should overrule the Objection.

**RESPONSE**

1. On September 4, 2020, DePalma properly elected pursuant to section 1111(b) of the Bankruptcy Code to have the full amount of its $576,927.58 claim treated as a secured claim

to the extent allowed "notwithstanding section 506(a)" of the Bankruptcy Code. *See* ECF No. 23; 11 U.S.C. § 1111(b). The impact of the Section 1111(b) Election is that the Debtor's plan must provide for DePalma to receive payments equaling the full amount of its claim over time. *See In re 680 Fifth Ave. Assocs.*, 156 B.R. 726, 734 (Bankr. S.D.N.Y. 1993) ("At a minimum, the deferred payments must equal the value of the total claim if the creditor makes a § 1111(b)(2) election.").

2.      The Debtor objects on two grounds. First, the Debtor argues that DePalma's interest in the taxi medallion securing its claim "is of inconsequential value" under section 1111(b)(1)(B)(i) of the Bankruptcy Code. *See* Obj. at 2-3. Second, the Debtor argues that the Section 1111(b) Election is untimely or otherwise precluded by the filing of its proof of claim. *See* Obj. at 3-5. The premise underlying both of the Debtor's arguments is that the Court should analyze a secured creditor's election under section 1111(b) in the context of a small business restructuring under subchapter V of the Bankruptcy Code ("Subchapter V") differently than it would a similar election in a case not commenced under Subchapter V. *See* Obj. at 1-2, 4.

3.      For the reasons stated below, each of these arguments should be rejected, and the Objection should be overruled.

## I. SUBCHAPTER V OF THE BANKRUPTCY CODE DOES NOT IMPACT THE APPLICATION OF SECTION 1111(B)

4.      Relying solely on the decision of the Bankruptcy Court for the Eastern District of Pennsylvania in *In re Body Transit, Inc.*, 2020 WL 4574907 (Bankr. E.D. Pa. Aug. 7, 2020), the Debtor argues that the underlying purpose of Subchapter V of the Bankruptcy Code, which codifies the Small Business Restructuring Act (the "SBRA"), weighs in favor of denying the Section 1111(b) Election. Obj. at 1-2 (quoting *Body Transit*, 2020 WL 4574907, at *18). The Debtor overstates the *Body Transit* holding, which relied heavily on the facts of that case. Importantly, the

*Body Transit* decision supports that section 1111(b), and the corresponding body of chapter 11 authority addressing section 1111(b) elections, applies equally in Subchapter V cases.

5. The *Body Transit* court made clear that, "[i]n considering purposes and policy of the SBRA," it did not "mean to suggest that the term 'inconsequential value'"—the first basis for the Debtor's Objection—"has a different meaning in a subchapter V case as compared to a traditional chapter 11 case." *Body Transit*, 2020 WL 4574907, at *18 n.31. But even if Debtor were right (which it is not) that *Body Transit* implies that section 1111(b) should somehow be limited by Subchapter V of the Bankruptcy Code, that reasoning from a bankruptcy court outside of this Circuit should not be adopted here. Although Subchapter V specifically provides that certain sections of the Bankruptcy Code do not apply to small business restructurings, *see* 11 U.S.C. § 1181(a), or that other sections of the Bankruptcy Code have limited application in a small business restructuring, *see, e.g.*, 11 U.S.C. § 1191(b), Subchapter V does not limit, at all or in part, the application of section 1111(b). Indeed, none of the sections of Subchapter V even reference section 1111(b). *See* 11 U.S.C. §§ 1181-1195. Clearly, had Congress intended for the application of section 1111(b) to be limited in cases under the SBRA, it would have included that limitation in the statutes. *See, e.g.*, *In re Enron Corp.*, 341 B.R. 141, 156 n.12 (Bankr. S.D.N.Y. 2006) (in analyzing section 510(b) of the Bankruptcy Code, stating that "[i]f Congress wanted to subordinate *all* claims of security holders to an equity position, regardless of the source of the claim, Congress would have [said so]")) (internal citations omitted); *In re Homaidan*, 596 B.R. 86, 102 (Bankr. E.D.N.Y. 2019) (in analyzing section 523(a)(8) of the Bankruptcy Code, stating that "if Congress intended this subsection to include loans, it would have said so").[1]

---

[1] Moreover, nothing in section 1111(b) or the Bankruptcy Code supports the Debtor's argument that its unsubstantiated allegation that DePalma "purchased its claim at a steeply discounted price" has any relevance to the propriety of the Section 1111(b) Election.

3

## II. DEPALMA'S INTEREST IN THE TAXI MEDALLION IS NOT OF INCONSEQUENTIAL VALUE

6. Contrary to the Debtor's argument, even if followed, *Body Transit* does not support a finding of inconsequential value here.

7. As the *Body Transit* court recognized, it appears very rare for courts to sustain a debtor's objection to a secured creditor's election under section 1111(b) on the basis that the secured creditor's interest in the collateral securing its claim was of inconsequential value. At least one court has held that, for a creditor's interest in the collateral securing its claim to be of inconsequential value, the collateral must have no value at all such that the creditor is entirely undersecured. *See In re Baxley*, 72 B.R. 195, 198 (Bankr. D.S.C. 1986) (overruling inconsequential value objection where the value of the collateral equaled 8% of the total claim). And the *Body Transit* court noted that **only one other reported case** sustained such an objection on the basis of inconsequential value. *Body Transit*, 2020 WL 4574907, at *17 (citing *In re Wandler*, 77 B.R. 728 (Bankr. D.N.D. 1987)). In that case, the value of the collateral equaled only 4% of the amount of the total claim. *Wandler*, 77 B.R. at 733.

8. In *Body Transit*, the court considered competing valuations that set the value of collateral at either 3% or 8.2% of the total amount of the claim. *Body Transit*, 2020 WL 4574907, at *17. After ruling that the collateral must be valued on a going concern basis, and accepting the higher valuation, the court stated that "[a]dmittedly, when . . . determining the value of the assets to be . . . 8.2% [of the total claim], ***the issue is a closer call***." *Id.* at 19 (emphasis added). Although a close call at 8.2%, the court sustained the debtor's objection. *Id.*

9.  There is no close call in this case. Even applying the Debtor's recently asserted valuation of $90,000 (which DePalma disputes),[2] the value of the collateral is still 15.56% of the amount of DePalma's claim—***almost twice*** the percentage that the *Body Transit* court found was a close call.[3] The Debtor cites no case, and DePalma is aware of none, where a court sustained an objection to a section 1111(b) election on the basis of inconsequential value at that level of proportional value.

### III. DEPALMA'S SECTION 1111(B) ELECTION IS NOT UNTIMELY OR OTHERWISE PRECLUDED

10.  The Debtor next argues that DePalma should be precluded from making its Section 1111(b) Election because it is untimely or inconsistent with DePalma's proof of claim. *See* Obj. 3-5. The Debtor is wrong on both points.

11.  <u>First</u>, the Section 1111(b) Election was timely. As the Debtor acknowledges, Federal Rule of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>") 3014 provides that a creditor may make its section 1111(b) election "at any time prior to the conclusion of the hearing on the disclosure statement or within such time as the court may fix." Fed. R. Bankr. P. 3014. No disclosure statement hearing has concluded in this case, and the Court has not fixed any other deadline for making an election pursuant to section 1111(b). While the Debtor is correct that no disclosure statement is required in a case under Subchapter V, *see* Obj. at 4, nothing prevented the

---

[2] The Court can, and should, overrule the Debtor's objection even assuming the Debtor's latest proposed valuation of $90,000. To be clear, though, DePalma disputes that valuation and the admissibility, reliability, and relevance of the evidence it is based upon, which was submitted for the first time in the Debtor's reply brief in support of its motion pursuant to section 506(a). *See* ECF No. 29. Among other things, the two-page report from Maltz Auctions, Inc. that the Debtor references in its Objection, *see* Obj. at 3, indicates that the drafter of that report will not be available to testify in or out of court, will not appear in court to explain his valuation, and does not include any of the data supporting his valuation conclusions. *See* ECF No. 29-3.

[3] At the $125,000 valuation proposed in the Debtor's motion pursuant to section 506(a) [ECF No. 19], the value of the taxi medallion is 21.7% of DePalma's total claim, and, under the $200,000 valuation set forth in DePalma's proof of claim, which DePalma will be prepared to defend, if necessary, at an evidentiary hearing, the value of the taxi medallion is 34.7% of DePalma's total claim.

Debtor from requesting the Court fix a deadline for making section 1111(b) elections, as contemplated under Bankruptcy Rule 3014.

12.     Citing no statute or case law, the Debtor argues that, because no disclosure statement is required in this case, the Court should retroactively fix a deadline in this Subchapter V case such that the Section 1111(b) Election would have to be made prior to the Debtor's filing of a chapter 11 plan. *See* Obj. at 4. That argument is both unpersuasive and unsupported by the Bankruptcy Code, the Bankruptcy Rules, or the case law. As discussed above, nothing in Subchapter V addresses section 1111(b) of the Bankruptcy Code in any way, including the timeliness of a section 1111(b) election, and the Debtor cites no case law supporting its proposed earlier deadline. Moreover, such a deadline makes no sense in light of the fact that the primary purpose of section 1111(b) is to protect a secured creditor that believes its collateral is undervalued under a debtor's plan of reorganization. Thus, a secured creditor must first understand the debtor's proposed treatment of its claim before it can determine whether to make a section 1111(b) election. *See, e.g.*, *In re Stanley*, 185 B.R. 417, 428 (D. Conn. 1995) ("[T]he electing class 'must know the prospects of its treatment under the plan before it can intelligently determine its rights under § 1111(b).'") (citation omitted). And, in this case, the Debtor's proposed retroactive deadline would require creditors make an election under section 1111(b) before even the deadline for filing proofs of claims. *See* ECF No. 18 (order setting July 30, 2020 bar date).

13.     <u>Second</u>, the Debtor argues that, even if the Section 1111(b) Election was timely, DePalma should be precluded from making it because, the Debtor asserts, DePalma already decided not to make that election when filing its proof of claim. Obj. at 3-5. This argument is equally unpersuasive and unsupported by authority. In support of this argument, the Debtor cites three cases that are inapposite and deal with the question of whether a creditor may change a

section 1111(b) election *after* having made one. *See In re Scarsdale Realty Partners, L.P.*, 232 B.R. 300, 302 (S.D.N.Y. Apr. 1999) (holding that creditor may withdraw a section 1111(b) election where material, previously undisclosed information was divulged in an amended disclosure statement and hearings on an amended disclosure statement had not concluded and therefore it "would still be able to make a timely election in the first instance"); *In re Consol. Props., Ltd. v. P'ship*, 170 B.R. 93, 95 (D. Md. 1994) (holding that creditor was not required to make a second section 1111(b) election under subsequently amended plan where it had not withdrawn original election); *In re Paradise Springs Assocs.*, 165 B.R. 913, 919 (D. Ariz. 1993) (rejecting creditor's effort to withdraw a section 1111(b) election after the conclusion of the disclosure statement hearing on the basis of changes to the plan that were not "objectively and materially adverse" to creditor's interest).

14.    None of these cases provide that the creditor's submission of a proof of claim constitutes an election under section 1111(b), and the Debtor cites no case or statute providing that the submission of a proof of claim that bifurcates a creditor's claim into secured and unsecured portions of the claim precludes that creditor's ability to later make a timely election under section 1111(b). Indeed, the cases cited by the Debtor are only applicable here to the extent that *Scarsdale Realty Partners* provides that a creditor may, in fact, change its election under section 1111(b) until such time as the deadline to make an original election expires. *See Scarsdale Realty Partners*, 232 B.R. at 302

15.    Moreover, the Debtor did not rely on DePalma's proof of claim when it filed its chapter 11 plan on May 19, 2020. *See* Obj. at 5. As the Court is aware, by setting the secured amount of DePalma's claim at $130,000 (and seeking to reduce that secured amount twice since to $125,000 [ECF No. 19] and $90,000 [ECF No. 29]), the Debtor's plan, which seeks, inter alia,

a non-debtor discharge, and the Debtor's actions taken since filing the plan have all been ***contrary to*** DePalma's proof of claim.

16.    In fact, by making the Section 1111(b) Election following the Debtor's motion under section 506(a), DePalma has acted entirely consistently with a fundamental purpose of section 1111(b)—protecting itself in response to the Debtor's position that the value of the collateral has declined under current market conditions. *See In re Weinstein*, 227 B.R. 284, 295 n.12 (B.A.P. 9th Cir. 1998) (explaining that, by making a section 1111(b) election, a creditor whose collateral may be "temporarily depressed" is protected in the event that the value of the collateral rebounds post-bankruptcy); *In re 183 Lorraine St. Assocs.*, 198 B.R. 16, 27 (E.D.N.Y. 1996) (noting that the purpose of the § 1111(b)(2) election is to protect secured creditors from the opportunistic cashing out of their claims during periods of market contraction); *see also In re Stanley*, 185 B.R. at 428 ("Where a § 506(a) motion is made prior to the time a creditor elects § 1111(b)(2) treatment, that procedural happenstance cannot alter the creditor's substantive rights under § 1111(b).").

## **CONCLUSION**

**WHEREFORE**, DePalma respectfully requests the Court enter an order overruling the Objection and such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 18, 2020

HERRICK, FEINSTEIN LLP

By: ___/s/ Stephen B. Selbst___
  Stephen B. Selbst
  Sean E. O'Donnell
  Christopher W. Carty
Two Park Avenue
New York, NY 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
sodonnell@herrick.com
ccarty@herrick.com

*Attorneys for DePalma Acquisition I, LLC*

HF 13488174v.1