UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                        :
                                                              :           **Chapter 11**
**VP WILLIAMS TRANS, LLC,**                                   :
                                                              :           **Case No. 20-10521 (MEW)**
                                        Debtor.               :
-----------------------------------------------------------------x

## DECISION DENYING DEBTOR'S OBJECTION TO SECTION 1111(B) ELECTION

Debtor VP Williams Trans., LLC ("**VP Williams**") is the debtor in a pending subchapter V chapter 11 case. VP Williams operates a taxi business and owns a single taxi medallion in which creditor DePalma Acquisition I, LLC ("**DePalma**") holds a perfected security interest. DePalma acquired its claim and security interest by assignment from the National Credit Union Administration Board.

Two underlying loans are secured by the medallion. The loans also are guaranteed by the sole owner of VP Williams, Mr. Vasilios Papaioannou. VP Williams has not listed any creditors other than DePalma, and no creditors other than DePalma have filed proofs of claim.

DePalma's proof of claim was filed on March 30, 2020. *See* Claim No. 1-1. The proof of claim alleged that the outstanding debt as of the petition date was $576,927.58. DePalma answered "yes" to the question of whether the claim is secured, and then listed $200,000 in response to the questions that asked for the "value of property" and "amount of the claim that is secured." It also completed the calculation that the official claim form calls for as to the balance of the claim ($376,927.58) that exceeds the collateral value and therefore is unsecured.

On May 19, 2020, VP Williams filed a proposed plan of reorganization. The plan proposes that the debtor retain the medallion and continue to use it. The plan also proposes to divide the DePalma claim into two separate "secured" and "unsecured" claims and to pay only

the secured claim in full. The debtor's future disposable earnings, and some funds from Mr. Papaiannou and his family, would be used to pay the secured claim and to make very small payments (estimated at 3%) on the unsecured claim. In exchange Mr. Papaiannou and VP Williams have asked that Mr. Papaiannou be released from his guarantee obligations, though at a recent hearing the attorney for VP Williams stated that it would proceed with the chapter 11 plan even if it could not obtain such a release.

A flurry of other motions are now pending. VP Williams has filed a motion asking the Court to value the taxi medallion and to reclassify the secured and unsecured portions of the DePalma proof of claim. VP Williams contends that the medallion has a current fair value of only $90,000. DePalma disagrees and has moved to dismiss the subchapter V case or, in the alternative, for relief from the automatic stay so that it may enforce its security interests in the medallion. DePalma also filed an election under section 1111(b) of the Bankruptcy Code on September 4, 2020. VP Williams has objected to the section 1111(b) election and has moved to strike it on two grounds. First, VP Williams contends that the value of the medallion is "inconsequential" and therefore than an election under section 1111(b) is not available. Second, VP Williams contends that it is too late for DePalma to make a section 1111(b) election and that DePalma is bound by its proof of claim, which allegedly constituted an election not to use section 1111(b).

I directed De Palma to respond to the debtor's objection to the section 1111(b) election and directed the debtor to file any further materials relevant to the section 1111(b) issue and held a further hearing on September 24, 2020 to address those issues.

## **The Significance of the Section 1111(b) Election**

Section 1111(b) of the Bankruptcy Code is a bit cryptic in its wording and over time has fostered some confusion. The default rule in a bankruptcy case is that an undersecured claim is divided into its "secured" and "unsecured" components. *See* 11 U.S.C. § 506(a)(1). Section 1111(b)(2) provides that if a "class" of claims so elects, then "notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed." If a class of secured claims makes the election under section 1111(b)(2) then the full amount of each such claim, and not just an amount that is equal to the value of the respective underlying collateral, must be treated as a "secured" claim under a plan of reorganization.

An election under section 1111(b)(2) affects a debtor's ability to confirm a plan of reorganization over the objection of a secured creditor. A plan cannot be confirmed over the objection of a secured creditor in a subchapter V case unless the plan is "fair and equitable" with respect to its secured claims. *See* 11 U.S.C. § 1191(b). This, in turn, requires that the treatment of the relevant secured claims comply with the requirements of section 1129(b)(2)(A) of the Bankruptcy Code. *See* 11 U.S.C. §§ 1191(c)(1). Section 1129(b)(2)(A) provides that a plan is "fair and equitable" as to non-consenting secured creditor claims if the plan meets one of three tests:

    (i)    (I)   that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

             (II)  that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

    (ii)   for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such

3

> liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

The plan of reorganization that is presently on file does not satisfy any of these tests.

VP Williams apparently does not wish to sell the medallion and in the absence of such a sale, section 1129(b)(2)(A)(ii) is irrelevant. In addition, if the section 1111(b) election is valid, then the secured claim would exceed $575,000 in amount, and VP Williams does not contend that it is able to provide DePalma with a plan treatment that would constitute the "indubitable equivalent" of such claim. VP Williams therefore could only invoke section 1129(b)(2)(A)(i) in support of confirmation. In that case the plan would have to provide for deferred payments that nominally would total at least the full amount of the $575,000 claim, though the actual discounted present value of the proposed deferred payments would only need to be equal to the current value of the medallion.

If (by contrast) the section 1111(b) election is not available to DePalma, then the "secured' claim would only be equal to the value of the medallion itself, not the full amount of the debt owed to DePalma. In that case confirmation under section 1119(b)(2)(A)(i) would only require deferred payments with a nominal total that is at least equal to the value of the medallion (not the entire amount of the secured claim), though the present value of such payments would still need to be equal to the value of the collateral. Alternatively, VP Williams could seek confirmation on the ground that it has proposed a treatment of the secured claim that is the "indubitable equivalent" of the value of the medallion.

4

**Whether the Value of the Secured Claim Is "Inconsequential"**

An election under section 1111(b) is not available if the interest of the claimholders in the relevant collateral is "inconsequential." *See* 11 U.S.C. § 1111(b)(1)(B)(i). VP Williams has contended that DePalma's interest in the medallion is "inconsequential" and therefore that the section 1111(b)(2) election is not available in this case.

The term "inconsequential" is not defined in the Bankruptcy Code, but the same word is used in section 554 of the Bankruptcy Code, which provides a means by which a trustee may abandon property of the estate. Courts have taken different approaches in deciding how to measure whether property is of "inconsequential" value. No matter which approach is taken, however, it is impossible for me to see how the medallion in this case could be deemed to be of "inconsequential" value.

The most obvious approach, and the one most consistent with how we ordinarily apply statutes, is to determine and to apply the plain meaning of the word "inconsequential." The Merriam-Webster dictionary defines "inconsequential" as meaning "irrelevant," "of no significance" or "unimportant."[1] The Cambridge English Dictionary defines "inconsequential" as something "able to be ignored."[2] In this case, DePalma has argued that the medallion has a value of $200,000. VP Williams contends that the value of the medallion is shrinking and currently is only about $90,000. As an abstract matter neither a $90,000 value nor a $200,000 value is "inconsequential." *See, e.g., In re Rideout*, 75 B.R. 104, 108 (Bankr. N.D. Ohio 1987) (holding that collateral with a value of $39,000 was not inconsequential).

---

[1]   *See Inconsequential*, Merriam-Webster, https://www.merriam-webster.com/dictionary/inconsequential (last visited Sept. 28, 2020).

[2]   *See Inconsequential*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/inconsequential (last visited Sept. 28, 2020).

It is true that some context is required. An item of a certain value might be relatively "inconsequential" to a multi-billion dollar company. But VP Williams is not a multi-billion dollar enterprise. The medallion is its most important and most valuable asset, no matter what value is ascribed to it. I note that VP Williams, in response to DePalma's motion for relief from the automatic stay, has argued that the medallion is essential to the debtor's reorganization. It is impossible to conclude that the value of the medallion is "irrelevant," "of no significance," or something that is "able to be ignored" where it is the debtor's most important and valuable asset and where, by the debtor's admission, the medallion is essential to the reorganization.

In short, the value of the medallion is key to this entire case, and cannot fairly be regarded as "inconsequential." I cannot imagine, for example, that the taxi medallion in this case could conceivably be treated as having "inconsequential" value if the debtor owned the medallion outright and were to file a notice of an intention to abandon it under section 554 of the Bankruptcy Code. I see no justification for giving the word "inconsequential" a radically different meaning in the context of an 1111(b) election than it would have in the context of an abandonment under section 554.

Some courts have taken different approaches to the determination of whether a secured claim is "inconsequential." Some have held that the value of the asserted secured interest should be compared to the overall value of the collateralized asset in order to determine whether, in context, the lien is of "inconsequential" value. Under this view, for example, the lien that is owned by a junior secured creditor who is almost completely out-of-the money would have "inconsequential" value as a percentage of the value of the asset. *See, e.g., McGarey v. MidFirst Bank (In re McGarey),* 529 B.R. 277 (D. Ariz. 2015). Frankly, it is hard to see the difference in the usual case between this approach and an approach that measures the value of the secured

6

claim in the abstract. It does not matter in the VP Williams case, however, because it is admitted that DePalma is undersecured and holds the only security interest in the medallion, and therefore that the value of DePalma's lien is equal to 100% of the value of the collateral itself. *See In re AT-NET Servs.-Charlotte, Inc.*, Case No. 14-32047, 2015 WL 4915716 at *5 (Bankr. W.D.N.C. Aug. 17, 2015) (holding that the secured creditor's lien equaled the entire value of the collateral and therefore was not "inconsequential.")

Some other courts have taken the view that whether the value of a lien is "inconsequential" should be decided by comparing the value of the security interest to the total dollar amount of the underlying secured claim. *See In re Wandler*, 77 B.R. 728, 733 (Bankr. N.D. 1987). In this view, for example, a secured claim might be of "inconsequential" value if the security interest is worth only a small fraction of the total claim. The theory behind this approach is that a claim that is secured only to a minor extent should effectively be treated as an unsecured claim and thus remain ineligible for the section 1111(b) election. I have serious doubts about this approach. Certainly, there is little disagreement with the proposition that a junior secured claim that is almost entirely out of the money and therefore is very small in the abstract is "inconsequential." The problem comes in a case such as this one, where the value of the collateral is not small by itself but the creditor is significantly undersecured, so that the collateral value is significantly less than the amount of the total claim.

Assume, for example, that collateral is worth $100,000 and there is only one secured creditor. If the secured claim is $200,000 then presumably nobody would contend that the secured claim is "inconsequential." Should the result be different if, for example, the secured claim is $2 million? The value of the collateral and therefore the value of the secured claim is the same in each case. Note that if the section 1111(b) election is not available to the secured

7

creditor with the bigger claim, then the Bankruptcy Code would give a debtor *greater* rights to retain and use collateral against a secured creditor's will in a situation where the debtor's own economic interests in that collateral are actually far more out-of-the-money. I am not convinced that this result makes any sense.

Some courts have concluded that if the section 1111(b) election would give rise to a claim that could not practically be amortized fully under the standards set forth in section 1129(b)(2)(A)(i), then the secured claim should itself be regarded as "inconsequential." *See, e.g., In re Wandler*, 77 B.R. at 733 (holding that collateral worth $15,000 was of "inconsequential" value in light of a total claim of $390,000, and reasoning that deferred payments having a nominal amount of $390,000 but an actual current value of $15,000 would be unrealistic). However, it seems to me that the approach followed in *Wandler* makes the section 1111(b) election available to a dissenting secured creditor only if the debtor has a feasible way of complying with the election. There is nothing in the statute that suggests that "feasibility" from the debtor's perspective was intended to be a limit on a creditor's right to invoke section 1111(b). By its terms section 1111(b) protects creditors, and interpreting the word "inconsequential" as though it imports a feasibility limit into section 1111(b)(2) is not a fair interpretation of what the statute says.

VP Williams has relied on the decision by the Bankruptcy Court for the Eastern District of Pennsylvania in *In re Body Transit, Inc.*, Case No. 20-10014 ELF, 2020 WL 4574907 (Bankr. E.D. Pa. Aug. 7, 2020). In *Body Transit*, the debtor ran fitness clubs. It sold two locations and sought to reorganize around a third location. A bank held a significantly undersecured claim. The debtor proposed a subchapter V plan under which unsecured claims would receive no payments. The bank made an election under section 1111(b), and the debtor objected. After a

hearing, the court concluded that the bank's security interest in the debtor's assets had a value of $80,000. It had been agreed that the overall debt owed to the bank exceeded $900,000. *Id.* at *14.

The court in *Body Transit* held that the determination of whether the bank's secured claim was "inconsequential" should be made by comparing the value of its secured claim to the amount of its total claim. *Id.* at *16. The *Body Transit* court noted that in the *Wandler* case the value of the collateral was equal to only 4% of the total amount of the secured creditor's claim and that in *Body Transit*, by contrast, the collateral was worth 8.2% of the claim amount. *Id.* at *17. The *Body Transit* court therefore expressed doubt, based on precedent, as to whether the value of the secured claim could be deemed to be "inconsequential." *Id.*

Ultimately, however, the court held in *Body Transit* that the "inconsequential value" determination should be made in light of policy considerations. *Id.* at *17-*18. The court noted that the bank was not being cashed out during a temporary decline in the value of its collateral, which it believed was the fact pattern that Congress envisioned when it enacted section 1111(b). The court also held that the circumstances of the case (including effects of the pandemic) called for "a more elastic application of the term 'inconsequential value.'" *Id.* at *18. The court further held that the purposes underlying subchapter V influenced its determination of whether the value at issue was "inconsequential." *Id.* The court held that the purpose of subchapter V is to permit small businesses to reorganize and to satisfy unsecured portions of claims by paying their projected disposable income for three to five years, and that this favored a lenient interpretation of section 1111(b). *Id.*

I appreciate the careful reasoning of the *Body Transit* decision and of course I respect the bankruptcy judge who rendered the decision, but respectfully I disagree with some of the

reasoning that is set forth in the decision. For example, the court referred to one of the "purposes" of section 1111(b) as a Congressional desire to protect secured creditors whose collateral had suffered a temporary decline in value. *Id.* at *14. However, there is nothing in section 1111(b) that limits its application to creditors who fall in that category. Section 1111(b) is not conditioned on a temporary decline in collateral value; it is available to secured creditors who are not happy with a value that a debtor has proposed, and who are not happy with the prospect of having to live with a judge's decision as to what the value of the collateral is.

      I note, too, that in any event the "temporary decline in value" argument cuts somewhat against the debtor in the case before me. The debtor has made clear that it believes that medallion values have dropped precipitously. Some drops in value occurred in prior years, long before this case was filed, but by the debtor's own reckoning values have fallen further due to the pandemic, to the point that the debtor has been revising its own valuations downward. To the extent that the collateral value is in decline due to the pandemic, DePalma's section 1111(b) election would serve the very policy that the court identified in *Body Transit*.

      The court in *Body Transit* also referred to the desire of Congress to foster small business reorganizations under the terms of subchapter V. *Id.* at *18. But I do not see how that should have any bearing on the interpretation of section 1111(b). Congress also desired to foster other forms of chapter 11 reorganizations, but section 1111(b) applies in all chapter 11 cases, including subchapter V. If section 1111(b) was supposed to give way in a subchapter V case, or to have a different application in such a case, that was for Congress to say, and Congress did not do so. Furthermore, while it is true that Congress desired to foster reorganizations under subchapter V when a small business debtor agrees to devote its projected disposable income to payments under the plan, that is only one of the tests that must be applied. *See* 11 U.S.C. § 1191(c). Congress

also required that secured creditors receive distributions that are "fair and equitable" under the same standards that apply in other chapter 11 cases. *Id.*

In any event, as interesting as all of the foregoing issues are, this is not a difficult case, no matter which view is taken. The collateral value in this case, even under the debtor's view, is at least twice as significant (as a percentage of claim amount) than was the case in *Body Transit*. It is at least 15.6% of the value of the total claim. Counsel to VP Williams acknowledged that he could not locate any decision holding that a collateral with such a proportionate value is "inconsequential," and I do not think that such a contention can be sustained.

## **Procedural Objections to the Section 1111(b) Election**

Rule 3014 of the Federal Rules of Bankruptcy Procedure provides as follows:

> An election of application of § 1111(b)(2) of the Code by a class of secured creditors . . . may be made at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix. If the disclosure statement is conditionally approved pursuant to Rule 3017.1, and a final hearing on the disclosure statement is not held, the election of application of § 1111(b)(2) may be made not later than the date fixed pursuant to Rule 3017.1(a)(2) or another date the court may fix.

*See* Fed. R. Bankr. P. 3014. Rule 3014 uses the disclosure statement hearing as a possible deadline for the filing of an 1111(b) election, but subchapter V does not contemplate the filing of a disclosure statement. So what is a court to do?

VP Williams argues that the date of the filing of the proposed plan should be the deadline for the filing of a § 1111(b) election, and therefore that DePalma's election was filed too late. I disagree. The statute and the applicable rules cannot reasonably be interpreted so as to require, in a subchapter V case, that an election under section 1111(b) is required before a plan is filed. The 1111(b) election by its terms is supposed to be filed on behalf of a class of creditors, and an election by a majority of a class of creditors is binding on the whole class. *See* Fed. R. Bankr. P. 3014. There are no "classes" of creditors except as defined in a proposed plan of reorganization,

11

and therefore there are no "classes" that can make a section 1111(b) election until a plan is proposed. If the election had to be made before the plan was even filed in a subchapter V case, then as a practical matter the election could not be made.

Furthermore, the whole point of the section 1111(b) election is to allow a secured creditor class to protect itself against a proposed plan treatment that it deems improper. *See In re Stanley*, 185 B.R. 417, 427 (D. Conn. 1995) ("[t]he electing class 'must know the prospects of its treatment under the plan before it can intelligently determine its rights under § 1111(b)'" (citing Advisory Committee Note (1983)).) Requiring an election to be made before the plan is even filed therefore would make no sense.

Arguably Rule 3014 could be interpreted as imposing no deadline at all in a subchapter V case, since there never is either a preliminary or a final hearing on a disclosure statement. But that, too, would make no sense. A bankruptcy court needs to know what standards to apply in determining whether a plan can be confirmed over the objection of a secured creditor class.

I think the only portion of Rule 3014 that can reasonably be applied in a subchapter V case is the portion that states that a section 1111(b) election may be made by the date fixed by the Court. I was never asked to set such a deadline and I never set such a deadline in this case. The section 1111(b) election that DePalma filed was made before any action was taken to solicit votes on the proposed plan of reorganization and before any other steps were taken in contemplation of confirmation. I find that it was timely.

I also hold that the section 1111(b) election is not barred by the terms of the prior proof of claim that DePalma filed. The information that DePalma provided as to the value of its collateral is information that was required by the official proof of claim form. The statement of the "secured" and "unsecured" portions of the claim was in accordance with the terms of section

12

506(a) Code. However, section 1111(b) contemplates that classes of secured creditors may elect to disregard the effect of section 506(a) and to treat the entirety of their claims as secured. There is nothing in the rules or the statute that suggests that the statements in prior proofs of claim bar creditors from making that section 1111(b) election.

Proofs of claim must be filed by a bar date, and the bar date almost inevitably precedes the filing of a chapter 11 plan. One of the very purposes of the bar date is to identify who may vote on a plan and who may participate in distributions. Rule 3014 nevertheless states that in an ordinary chapter 11 case an election may be made "at any time" before the disclosure statement is approved. It makes no exceptions for creditors whose proofs of claim have previously been filed or whose proofs of claim complied with the requirement to list the value of their underlying collateral.

The debtor has argued that the proof of claim constituted an election by DePalma to abide permanently by section 506(a) of the Bankruptcy Code, and that DePalma is barred from changing that election. But the only cases cited in support of that argument are three cases that discussed whether a class of creditors could withdraw a section 1111(b) election after having made one. The proof of claim submitted the information that the form demanded. Finding an implicit waiver of section 1111(b) rights would effectively require that a section 1111(b) election be made at or before the filing of a proof of claim, which is contrary to what Rule 3014 plainly says.

Accordingly, I find that DePalma's election under section 1111(b) of the Bankruptcy Code was timely, effective and not waived. The objection to the section 1111(b) election therefore is denied. For the reasons stated on the record the parties are urged to continue to try to work out their differences with the assistance of the subchapter V trustee.

Dated: New York, New York
September 29, 2020

**s/Michael E. Wiles**
Hon. Michael E. Wiles
United States Bankruptcy Judge